BABCOCK v LIEDIGK

Docket No. 144832. Submitted December 16, 1992, at Lansing. Decided March 1, 1993, at 9:20 A.M.

Ellen M. and Benjamin H. Babcock brought a dramshop action in the Ogemaw Circuit Court against Erick Liedigk and Bailey's Green Turtle, Inc., alleging that Bailey's had served alcoholic beverages to Liedigk while visibly intoxicated before he caused an automobile accident in which Ellen was injured. Bailey's was insured for dramshop liability by North Pointe Insurance Company for the $50,000 minimum coverage required by the dramshop act. However, before the plaintiffs' cause of action accrued, North Pointe had paid two claims that exhausted the policy limit. A consent judgment for $250,000 was subsequently entered, with the plaintiffs agreeing not to execute the judgment against Bailey's corporate assets and Bailey's assigning to the plaintiffs its rights against North Pointe. The plaintiffs served a writ of garnishment on North Pointe, seeking to collect $50,000 under the policy. The court, Carl L. Horn, J., granted summary disposition for North Pointe. The plaintiffs appealed.

The Court of Appeals *held*:

1. MCL 436.22a(2); MSA 18.993(1)(2) requires of a liquor licensee proof of financial responsibility of at least $50,000 in the form of cash, unencumbered securities, a policy of liquor liability insurance, a surety bond, or membership in a self-insurance pool. Contrary to the plaintiffs' contention, the statute requires coverage of at least $50,000 in the aggregate, not for each occurrence. The trial court did not err in determining that the North Pointe policy limit had been exhausted by the prior claims.

2. The plaintiffs are not entitled to a pro-rata share of the $50,000 that was paid under the policy. At the time the two prior claims were paid, the plaintiffs had at most a potential claim against Bailey's. There is no requirement under Michigan law that insurance proceeds not be distributed until all potential claimants are identified, the existence and extent of their claims verified, and the available insurance proceeds apportioned.

Affirmed.

*Howard R. Grossman,* for Ellen M. Babcock and Benjamin H. Babcock.

*Kallas & Henk, P.C.* (by *Wayne A. Geik*), for North Pointe Insurance Company.

Before: McDONALD, P.J., and GRIBBS and SAWYER, JJ.

SAWYER, J. Plaintiffs appeal from an order of the circuit court granting summary disposition in favor of garnishee-defendant North Pointe Insurance Company pursuant to MCR 2.116(C)(10) (no genuine issue of material fact). We affirm.

In 1989, plaintiffs were involved in an automobile accident with defendant Erick Liedigk in which plaintiff Ellen Babcock was injured. Plaintiffs commenced an action against Liedigk, claiming that Liedigk was negligent in driving while under the influence of intoxicating liquors. Thereafter, plaintiffs amended their complaint to add defendant Bailey's Green Turtle, Inc., as a defendant, pleading a cause of action under the dramshop act, alleging that Bailey's had served Liedigk while he was visibly intoxicated. North Pointe was Bailey's insurer for liquor liability during the times relevant to this action.

Before plaintiffs' automobile accident, two other claims were made against Bailey's for violations of the dramshop act during the same policy period. These claims were settled for $50,000, which represented the limits of the insurance policy issued by North Pointe.

A settlement was reached between plaintiffs and Bailey's in the amount of $250,000. In exchange for entering into the consent judgment, plaintiffs agreed that they would not attempt to collect the judgment from Bailey's corporate assets and Bai-

ley's assigned to plaintiffs any cause of action it might have against North Pointe. Plaintiffs thereafter served North Pointe with a writ of garnishment, claiming that North Pointe was liable to Bailey's in the amount of $50,000 on the basis of the consent judgment. North Pointe denied liability, stating that the insurance coverage for the policy period had been exhausted because of payment of the two previous claims. The parties moved for summary disposition and the trial court granted summary disposition in favor North Pointe, concluding that the policy was not ambiguous, that the total coverage provided was $50,000, and that that coverage had been exhausted. The court also rejected a claim by plaintiffs that, even if North Pointe were not liable for the full coverage amount, plaintiffs were entitled to a pro-rata share of the $50,000 that had been previously paid.

Plaintiffs first argue that the dramshop act requires liquor liability insurance of at least $50,000 for each occurrence and that an insurer cannot, therefore, issue a policy that has an aggregate limit of $50,000. It is undisputed that the insurance policy at issue in this case provided for an aggregate limit of $50,000. We disagree with plaintiffs' contention that the dramshop act requires the issuance of an insurance policy of not less than $50,000 limit for each occurrence and unlimited coverage in the aggregate.

MCL 436.22a(2); MSA 18.993(1)(2) provides as follows:

> Except as otherwise provided in subsection (3), beginning April 1, 1988, before the renewal or approval and granting of a retail license, a retail licensee or applicant for a retail license shall file with the commission proof of financial responsibility providing security for liability under section 22(4) of not less than $50,000.00. The proof of

financial responsibility may be in the form of cash, unencumbered securities, a policy or policies of liquor liability insurance, a constant value bond executed by a surety company authorized to do business in this state, or membership in a group self-insurance pool authorized by law that provides security for liability under section 22.

The primary goal of judicial interpretation of statutes is to give effect to the intent of the Legislature. *People v Hawkins,* 181 Mich App 393, 396; 448 NW2d 858 (1989). Thus, the question we are asked to answer is whether, in drafting the statute at issue in this case, the Legislature intended to require liquor liability insurance with limited or unlimited coverage in the aggregate. That is, does the minimum $50,000 coverage in the statute refer to coverage for each occurrence or coverage in the aggregate, or both? Reading the provisions of subsection 2 as a whole, we are satisfied that that question was correctly answered by the trial court: The minimum of $50,000 coverage to satisfy the financial responsibility provisions of the dramshop act refers to coverage in the aggregate, not coverage for each occurrence.[1]

In answering the question posed, we look to the terms of the statute and the means by which a party may satisfy the financial responsibility requirement of the statute. While obtaining liquor liability insurance may be the most common method of complying with the statute, it is not the only means of complying with the statute. The statute also permits the posting of cash or unencumbered securities. The question arises then, what would the result have been had defendant Bailey's satisfied its financial responsibility re-

---

[1] Or, perhaps more accurately, while coverage for each occurrence must be at least $50,000, coverage in the aggregate need not be greater than $50,000.

quirement by posting a $50,000 cash bond rather than obtaining liquor liability insurance? The result would have been the same as what occurred here, there would have only been $50,000 available to pay claims and, once those claims were paid and the cash bond exhausted, there would have remained no more security to ensure the payment of plaintiff's claim. That is, an insurance policy with coverage limits of $50,000 in the aggregate provides exactly the same security for the payment of claims as would the posting of a $50,000 cash bond or $50,000 in unencumbered securities. In other words, the posting of a $50,000 cash bond or $50,000 in unencumbered securities is, for all practical purposes, the same as obtaining an insurance policy with an aggregate limit of $50,000.

Thus, the fact that the requirements of the statute may be satisfied by the posting of $50,000 in cash or unencumbered securities reflects a legislative intent to create a total pool of $50,000 to secure the payment of claims, not a requirement to ensure the payment of at least $50,000 for each claim. That is, the statute provides for aggregate security, not security for each occurrence. To require the issuance of a liquor liability policy with an aggregate coverage greater than the amount required to be posted in the form of a cash bond or unencumbered securities would be contrary to the legislative intent behind the statute, absent some clear language in the statute that indicates that the Legislature intended to treat the posting of a cash bond or unencumbered securities differently than obtaining liquor liability insurance coverage to satisfy the financial responsibility requirement of the act.

For the above reasons, we conclude that the financial responsibility requirement of the dramshop act does not require that the aggregate limits

of a liquor liability insurance policy be greater than \$50,000.[2]

Next, plaintiffs argue that, even if a liquor liability insurance policy may have an aggregate limit of \$50,000, they were entitled to a pro-rata share of the proceeds. The trial court rejected this theory, as do we.

Plaintiffs cite no Michigan law in favor of their argument that they were entitled to a pro-rata distribution of the policy proceeds. Plaintiffs do cite cases from other jurisdictions,[3] but these cases are not on point. Those cases involved payments on bonds to other claimants after the defendants had notice of the plaintiffs' claims against the bonds, with the defendants choosing to pay other claimants instead. In the case at bar, plaintiffs had at most a potential claim against Bailey's at the time the prior lawsuits were settled.[4] Plaintiffs had no claim to the insurance proceeds until they obtained a judgment against Bailey's. By the time they did obtain a judgment, the coverage limits had been exhausted.

While there may be some merit to requiring a

[2] We note that there is an underlying assumption to plaintiffs' argument that, even if the policy issued by North Pointe did not meet the minimum requirements of the dramshop act, plaintiffs or Bailey's would have an action against North Pointe for the additional amount of coverage required by the statute but which was not provided for in the insurance policy. The financial responsibility provision of the dramshop act is a licensing requirement, and it does not necessarily follow that an insurance company would be liable for issuing a policy with inadequate limits. While that may very well be the case, we need not and do not resolve that question here and nothing in this opinion should suggest that we would automatically conclude that North Pointe would have been liable to plaintiffs had we agreed with plaintiffs' argument that North Pointe could not limit the aggregate coverage limit of the policy.

[3] *Miles v Fidelity & Casualty Co of New York,* 185 So 2d 613 (La App, 1966), and *Curry v Homer,* 62 Ohio St 233; 56 NE 870 (1900).

[4] Although not entirely clear, it appears that Bailey's had received notice from plaintiffs' counsel of the potential claim before the settlement of the prior claims, but those prior claims may have been settled before the commencement of litigation in the case at bar.

pro-rata distribution of funds under an insurance policy where multiple claims exist, the aggregate of which is in excess of the aggregate limits of the policy, we need not decide that issue in this case because plaintiffs had not yet realized a judgment against Bailey's before the exhaustion of the policy limits. We decline in the absence of relevant Michigan authority to create a rule that insurance proceeds may not be distributed until all potential claimants are identified, the existence and extent of their claims verified, and the available insurance proceeds apportioned. Plaintiffs have not brought to our attention any Michigan authority requiring such a result, and we are not persuaded that such a result is advisable. If such a rule were to apply, the payment of judgments and, for that matter, the settlement of claims, would be severely hindered. It would take, at a minimum, several years for any matter to be resolved because it would take at least that long to properly identify all potential claimants.

For example, consider a claimant whose claim arose on the first day of a one-year policy period. Even if liability and the measure of damages are clear, the claim could not be paid because an entire year would remain in the policy period during which other potential claims could arise. Even with the closing of the policy period, however, the claim could not be paid because the statute of limitations for an accident occurring on the last day of the period would not run until two years later. See MCL 436.22(5); MSA 18.993(5).

Thus, our hypothetical claimant has now waited three years after the accident to be paid. Even then, however, the claim would not necessarily immediately be paid because not all other claims may have been resolved. For example, consider another potential claimant who had a claim that

arose on the final day of the policy period and waited the full two years under the statute of limitations to file a complaint, more time would elapse pending the resolution of that claim. Assuming that the matter went to trial and an appeal followed, several years could pass from the time of the original claimant's accident at the beginning of the policy period until the final resolution of the existence of all claims arising during the policy period, the determination of the amount of those claims, and a final accounting of the pro-rata distribution to be made to each claimant.

While justice might be served in some cases by ensuring that all claimants got at least a portion of their claims paid instead of some claimants receiving all the insurance proceeds and others receiving none, justice would not be served for those claimants who had to patiently wait for the payment of their claims until it could be determined that no other potential claims existed, or if claims did exist, a determination of the validity and extent of those claims.[5]

At best, this presents a policy question that must be left to the Legislature to address before imposing such potential burdens on litigants. This is particularly true in view of the fact that the area of dramshop actions has been vigorously considered by the Legislature in recent years. Specifically, the Legislature, in creating the financial

---

[5] Indeed, consider the plight of our hypothetical claimant whose claim arose at the beginning of a policy period and who is faced with another claimant whose potential claim arose on the last day of the period, filed suit two years later just before the period of limitation had expired, and where that subsequent claim lacks merit. That claim could go to trial, a verdict of no cause of action rendered, and the claimant in the subsequent action taking an appeal, only to have the verdict affirmed. Our original claimant with the meritorious claim would then have waited several years to be paid for that meritorious claim while awaiting the final disposition of a nonmeritorious claim. Justice would not have been served.

responsibility requirements under the dramshop act, established a requirement that there be a minimum fund of $50,000 to ensure at least partial payment of claims. Clearly, as this case demonstrates, that amount is not sufficient to fully pay all potential claims that may arise under the dramshop act. The Legislature was certainly aware of that fact and balanced the competing interests involved and reached its judgment with respect to the appropriate resolution. Likewise, it would be more appropriate for the Legislature, rather than this Court, to weigh the competing interests presented in determining pro-rata distribution of the fund created under the financial responsibility requirement and for the Legislature to determine where those interests should fall. Accordingly, we decline to disturb the status quo.

For the above reasons, we conclude that it would be unwise for this Court to create restrictions on the payment of insurance proceeds. It does not appear that any of the parties involved acted in bad faith in the settlement of the earlier claims in order to preclude plaintiffs in this action from collecting on their own claim. Therefore, absent a compelling reason to do so, we decline to require North Pointe to pay additional sums in excess of the policy limit merely because it failed to make a pro-rata distribution to all claimants and potential claimants.

In light of our resolution of the above issues, we need not consider the issue raised by plaintiffs concerning their entitlement to $1,000 in damages under MCL 436.22e; MSA 18.993(5) for North Pointe's failure to pay the judgment in ninety days.

Affirmed. North Pointe may tax costs.